1
2
3
4

**UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS**

KIMBERLY LOUGHRAN,                     )
                                       )
        Plaintiff                      )
                                       )
        v.                             )  **Case No.:**
                                       )
LAW OFFICES OF GREGORY P.              )  **COMPLAINT AND DEMAND FOR**
TURNER, FIRST RESOLUTION               )  **JURY TRIAL**
INVESTMENT CORPORATION, and            )
JOHN DOE                               )  **(Unlawful Debt Collection Practices)**
                                       )
        Defendants                     )
                                       )

5
6
7
8
9
10

## COMPLAINT

KIMBERLY LOUGHRAN ("Plaintiff"), by her attorneys, KIMMEL & SILVERMAN, P.C., alleges the following against the LAW OFFICES OF GREGORY P. TURNER ("TURNER"), FIRST RESOLUTION INVESTMENT CORPPORATION ("FRIC") (collectively "Defendants"), and their agent, JOHN DOE:

## INTRODUCTION

1.     Plaintiff's Complaint is based on the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

## JURISDICTION AND VENUE

2.     Jurisdiction of this court arises pursuant to 15 U.S.C. § 1692k(d), which states that such actions may be brought and heard before "any appropriate United States district court

- 1 -

1    without regard to the amount in controversy," and 28 U.S.C. § 1331 grants this court original

2    jurisdiction of all civil actions arising under the laws of the United States.

3        3.    Defendants conduct business and has an office in the Commonwealth of

4    Massachusetts and therefore, personal jurisdiction is established.

5        4.    Venue is proper pursuant to 28 U.S.C. § 1391(b)(1).

6        5.    Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

7

8                                       **PARTIES**

9        6.    Plaintiff is a natural person residing in Medford, Massachusetts, 02155.

10

11       7.    Plaintiff is a "consumer" as that term is defined by 15 U.S.C. § 1692a(3).

12       8.    Defendant TURNER is a national debt collection company with corporate

13   headquarters located at 55 Moody Street, Waltham, Massachusetts, 02453.

14       9.    Defendant FRIC is a national debt collection company with corporate

15   headquarters located at 851 Coho Way # 312, Bellingham, Washington, 98225.

16       10.   On information and belief, Defendant JOHN DOE is an agent of Defendants

17   Turner and FRIC, is an attorney licensed to practice law in the state of Massachusetts, and acts

18   as a debt collector.

19       11.   Defendants are each a "debt collector" as that term is defined by 15 U.S.C. §

20   1692a(6), and repeatedly contacted Plaintiff in an attempt to collect a debt.

21       12.   Defendants acted through its agents, employees, officers, members, directors,

22   heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers.

23

24

25

PLAINTIFF'S COMPLAINT

**PRELIMINARY STATEMENT**

13.     The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute, which prohibits a catalog of activities in connection with the collection of debts by third parties. See 15 U.S.C. § 1692 *et seq.* The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. § 1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, prohibit harassing and abusive tactics, and proscribe unfair or unconscionable conduct, both generally and in a specific list of disapproved practices.

14.     In particular, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The FDCPA is designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, broadly prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements in connection with the collection of a debt.

15.     In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability,

- 3 -

to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692a. Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692b.

16.     Congress enacted the FDCPA to regulate the collection of consumer debts by debt collectors. The express purposes of the FDCPA are to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692e.

**FACTUAL ALLEGATIONS**

17.     At all relevant times, Defendants were attempting to collect an alleged consumer debt from Plaintiff.

18.     Based on information and belief, Defendant TURNER was acting on behalf of Defendant FRIC at all times relevant herein.

19.     The alleged debt at issue arose out of transactions, which were primarily for personal, family, or household purposes.

20.     On January 15, 2009, Defendants TURNER and FRIC filed a complaint in the District Court of Somerville Massachusetts seeking a judgment in that amount of $2,253.58 for an alleged debt owed to First Resolution Investment. See Exhibit A.

21.     Defendants TURNER and FRIC listed and served the complaint at 100 Bow Ave #1, Medford, MA. See Exhibit A.

22.     The address listed in TURNER and FRIC's Complaint for Plaintiff is her parent's residence; Plaintiff has not resided at this address for over fifteen (15) years.

23.     Prior to the complaint being filed with the Court, Plaintiff had not received any

PLAINTIFF'S COMPLAINT

1    notice from either TURNER or FRIC indicating that Plaintiff owed an alleged debt.

2    24.    Subsequently on June 8, 2009, Defendants TURNER and FRIC obtained a default

3    judgment against Plaintiff in the amount of $4,073.95l; however, Defendants did not advise

4    Plaintiff of the judgment.

5    25.    Rather, Plaintiff did not learn of this debt and the judgment until Plaintiff's parents

6    contacted her and indicated that a warrant for her arrest had been delivered to their house.

7    26.    On August 30, 2010, Plaintiff sent correspondence to Defendant TURNER

8    reflecting a conversation that had taken place between Plaintiff and Defendant TURNER in

9    which Plaintiff asked for more information pertaining to the alleged debt, as she could not recall

10   the account in question. See Exhibit B.

11   27.    Defendant TURNER's representative, Gregory Turner, had informed Plaintiff that

12   he was not going to ask his client, Defendant FRIC, for any additional information regarding the

13   account in question, such as the original contract or a list of past purchases. See Exhibit B.

14   28.    Defendant's representative, Gregory Turner, provided Plaintiff with limited

15   information, advising her only that the account in question was opened in 1994 and charged off

16   in 2003; however, this was insufficient information for Plaintiff to ascertain what debt

17   Defendants were seeking to collect from her. See Exhibit B.

18   29.    Plaintiff informed Defendant TURNER's representative, Gregory Turner, that it

19   had been sending correspondence to the wrong address and requested that copies of all

20   documents that where sent to the wrong address be sent to the correct address. See Exhibit B.

21   30.    On September 2, 2010, Plaintiff went to the Somerville District Court House in

22   regards to default judgment entered against her.

23   31.    While at the Court House a "Deputy Hickey" informed Plaintiff that there was an

24   attorney, Defendant JOHN DOE, waiting outside the courtroom to speak with her in regards to

PLAINTIFF'S COMPLAINT

her case.

32.   Based on upon information and belief, Defendant JOHN DOE was at all times relevant acting as an agent of both Defendants TURNER and FRIC.

33.   Defendant JOHN DOE asked Plaintiff about her case and then proceeded to ask Plaintiff if she had $40.00 to cover the costs associated with the arrest warrant that was issued against her.

34.   Defendant JOHN DOE indicated that Plaintiff would need to pay the $40.00 to him immediately.

35.   Plaintiff retrieved $40.00 from an ATM and handed it over to Defendant JOHN DOE.

36.   Once inside the courtroom Defendant JOHN DOE requested Plaintiff sit with him at the front of the courtroom and he proceeded to ask Plaintiff to provide financial information.

37.   Once Plaintiff divulged her financial information the attorney then stated, "now let me introduce myself I work on behalf of Defendant [FRIC]."

38.   This information came as a complete shock to Plaintiff who was under the impression that the attorney was working for the Somerville Court House and not for Defendants FRIC or TURNER.

39.   The attorney proceeded to tell Plaintiff that in light of their conversation it appeared she made enough money to pay Defendant TURNER's client, Defendant FRIC.

40.   Plaintiff informed Defendant JOHN DOE that she in fact did not have enough money to pay Defendant TURNER's client, Defendant FRIC.

41.   Plaintiff further expressed that after having been in contact with Defendant TURNER, she was still awaiting documentation regarding the alleged debt that so far had not been produced by either Defendant TURNER or Defendant FRIC.

- 6 -

PLAINTIFF'S COMPLAINT

42.  Defendant JOHN DOE told Plaintiff that he would try to accommodate the document request, and a new hearing date was scheduled for October 14, 2010.

43.  As Plaintiff was leaving the court room she requested a business card from the attorney who indicated he was working on behalf of Defendants TURNER AND FRIC; however, Defendant JOHN DOE told Plaintiff that he had nothing to do with her case, he did not want to be involved and that he was only acting on behalf of Defendants TURNER AND FRIC.

44.  Defendant JOHN DOE also refused to give Plaintiff his name.

45.  Upon information and belief, an attorney acting on behalf of Defendants TURNER AND FRIC acted with deception in order to deceive Plaintiff into revealing personal bank account information so Defendants TURNER AND FRIC could receive payment from Plaintiff.

46.  Plaintiff sent Defendant TURNER a letter on September 2, 2010, in which described the incident at the Somerville Court House.  See Exhibit C, Plaintiff's September 2, 2010 letter.

47.  In the September 2, 2010 letter, Plaintiff again provided Defendant TURNER with her current address and requested copies of documents establishing she owed the debt. See Exhibit C.

48.  On October 12, 2010, after receiving no documentation from Defendants TURNER and/or FRIC, Plaintiff sent Defendant TURNER another letter requesting any information regarding the alleged debt. See Exhibit D, Plaintiff's October 12, 2010 letter.

49.  On October 14, 2010, Plaintiff again appeared in Court regarding the default judgment; Plaintiff was approached by an attorney from Defendant TURNER, acting on behalf of Defendant FRIC, and indicated that Plaintiff should "pay the debt and stop spinning everyone's wheels."

50.  On October 15, 2010, Plaintiff sent yet another letter to Defendant TURNER

PLAINTIFF'S COMPLAINT

1    informing him of what took place during her October 14, 2010 court date, and once again

2    requested copies of documentation.  See Exhibit D, Plaintiff's October 15, 2010 letter.

3        51.  Plaintiff also indicated that she would be asking the Court to lift the default

4    judgment against her. See Exhibit D.

5        52.  On or around October 23, 2010, Defendant TURNER's representative, Gregory

6    Turner, sent correspondence to Plaintiff informing her that he did not believe she had the right to

7    view any documents regarding her case and that she did not have the right to re-litigate the case

8    regardless of whether or not she owed the money.  See Exhibit E, Defendant's October 23, 2010

9    letter.

10

11       53.  Upon information and belief, Defendant acted with malicious, intentional, willful,

12   reckless, negligent and wanton disregard for Plaintiff's rights with the purpose of coercing

13   Plaintiff into paying the alleged debt and that Defendant thereby caused Plaintiff harm.

14

15                        **CONSTRUCTION OF APPLICABLE LAW**

16       54.  The FDCPA is a strict liability statute. Taylor v. Perrin, Landry, deLaunay &

17   Durand, 103 F.3d 1232 (5th Cir. 1997).  "Because the Act imposes strict liability, a consumer

18   need not show intentional conduct by the debt collector to be entitled to damages." Russell v.

19   Equifax A.R.S., 74 F. 3d 30 (2d Cir. 1996); see also Gearing v. Check Brokerage Corp., 233

20   F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status

21   violated FDCPA); Clomon v. Jackson, 988 F. 2d 1314 (2d Cir. 1993).

22       55.  The FDCPA is a remedial statute, and therefore must be construed liberally in favor

23

24   of the debtor.  Sprinkle v. SB&C Ltd., 472 F. Supp. 2d 1235 (W.D. Wash. 2006).  The remedial

25   nature of the FDCPA requires that courts interpret it liberally.  Clark v. Capital Credit &

Collection Services, Inc., 460 F. 3d 1162 (9th Cir. 2006).  "Because the FDCPA, like the Truth

PLAINTIFF'S COMPLAINT

1  in Lending Act (TILA) 15 U.S.C §1601 *et seq.*, is a remedial statute, it should be construed

2  liberally in favor of the consumer." Johnson v. Riddle, 305 F. 3d 1107 (10th Cir. 2002).

3      56. The FDCPA is to be interpreted in accordance with the "least sophisticated"

4  consumer standard.  See Jeter v. Credit Bureau, Inc., 760 F.2d 1168 (11th Cir. 1985); Graziano

5  v. Harrison, 950 F. 2d 107 (3rd Cir. 1991); Swanson v. Southern Oregon Credit Service, Inc.,

6  869 F.2d 1222 (9th Cir. 1988).  The FDCPA was not "made for the protection of experts, but for

7  the public - that vast multitude which includes the ignorant, the unthinking, and the credulous,

8  and the fact that a false statement may be obviously false to those who are trained and

9  experienced does not change its character, nor take away its power to deceive others less

10  experienced." Id.  The least sophisticated consumer standard serves a dual purpose in that it

11

12  ensures protection of all consumers, even naive and trusting, against deceptive collection

13  practices, and protects collectors against liability for bizarre or idiosyncratic interpretations of

14  collection notices. Clomon, 988 F. 2d at 1318.

15

16                                    **COUNT I**
                                  **DEFENDANT VIOLATED**
17                      **THE FAIR DEBT COLLECTION PRACTICES ACT**

18

19      57.  In its actions to collect a disputed debt, Defendant violated the FDCPA in one or

20  more of the following ways:

21          a.  Defendant violated of the FDCPA generally;

22          b.  Defendant violated § 1692d of the FDCPA by harassing Plaintiff in

23              connection with the collection of an alleged debt;

24          c.  Defendant violated § 1692e of the FDCPA by using false, deceptive, or

25              misleading representations or means in connection with the collection of a

- 9 -

PLAINTIFF'S COMPLAINT

debt;

d. Defendant violated § 1692e(10) of the FDCPA by using false representations or deceptive means to collect or attempt to collect a debt;

e. Defendant violated § 1692f of the FDCPA by using unfair and unconscionable means with Plaintiff to collect or attempt to collect a debt;

f. Defendant acted in an otherwise deceptive, unfair and unconscionable manner and failed to comply with the FDCPA.

WHEREFORE, Plaintiff, KIMBERLY LOUGHRAN, respectfully pray for a judgment as follows:

a. All actual compensatory damages suffered pursuant to 15 U.S.C. § 1692k(a)(1);

b. Statutory damages of $1,000.00 for the violation of the FDCPA pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c. All reasonable attorneys' fees, witness fees, court costs and other litigation costs incurred by Plaintiff pursuant to 15 U.S.C. § 1693k(a)(3); and

d. Any other relief deemed appropriate by this Honorable Court.

## **DEMAND FOR JURY TRIAL**

PLEASE TAKE NOTICE that Plaintiff, KIMBERLY LOUGHRAN, demands a jury trial in this case.

- 10 -

PLAINTIFF'S COMPLAINT

1

RESPECTFULLY SUBMITTED,

2
DATED: 07/25/11                              KIMMEL & SILVERMAN, P.C..

3
By: /s/ Craig Thor Kimmel

4
Craig Thor Kimmel
Kimmel & Silverman, P.C.
5
30 E. Butler Pike
Ambler, PA 19002
6
Phone: (215) 540-8888
Fax: (877) 788-2864
7
Email: kimmel@creditlaw.com

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

PLAINTIFF'S COMPLAINT